# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| VICTOR NUNEZ, ) | CASE NO. 1:12CV903 |
| ) | |
| PETITIONER, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM OPINION** |
| JOHN COLEMAN, Warden, ) | **AND ORDER** |
| ) | |
| RESPONDENT. ) | |

Before the Court are petitioner's objections (Doc. No. 22) to the Report and Recommendation ("R&R") (Doc. No. 17) of the magistrate judge, recommending that respondent's motion to dismiss the petition[1] be granted. Respondent filed neither objections to the R&R nor any opposition to petitioner's objections. The matter is ripe for determination.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.").

---

[1] Respondent filed a motion to dismiss, using the CMECF event "Return of Writ." (Doc. No. 7.) Portions of the state court record are appended as exhibits to the motion/return. The bulk of the motion/return is directed at dismissal due to untimeliness, although there is some argument on the merits of petitioner's third ground for relief, namely, his claim of actual innocence. The R&R is based solely on untimeliness and does not address the actual innocence argument.

After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II. DISCUSSION

The R&R concludes that Nunez's petition should be dismissed because it is untimely—by the R&R's calculation, the petition was filed 42 days late. Nunez argues, by way of objection, that the R&R failed to account for a 90-day period of tolling during which he could have sought certiorari in the United States Supreme Court. He asserts that his petition was actually filed 48 days before the running of the one-year statute of limitations.

### A. Procedural Background

The January 2009 term of the Cuyahoga County grand jury indicted Nunez on five counts of rape, four counts of kidnapping with sexual motivation and sexually violent predator specifications, three counts of intimidation of a crime victim or witness, and one count of aggravated burglary. (Return [Doc. No. 7], Ex. 1.)[2] Following a jury trial, Nunez was found guilty of three counts of rape, two counts of kidnapping with sexual motivation specifications, one count of intimidation of a victim or witness, and one count of aggravated burglary. The court found him not guilty of the sexually violent predator specifications in the two counts of kidnapping.[3] (Ex. 4.) On August 31, 2009, he was sentenced to a total of twenty-two years in prison. (Ex. 5.)

---

[2] Unless otherwise specified, all exhibits referenced hereafter are located in Doc. No. 7.

[3] Nunez waived his right to a jury trial with respect to the sexually violent predator specifications. (Return, Ex. 3.)

After Nunez's motion for a new trial was denied (Ex. 11),[4] he filed his direct appeal, represented by new, appointed counsel. He raised five assignments of error:

1. The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against Appellant.

2. Appellant's convictions are against the manifest weight of the evidence.

3. The trial court erred by not following proper trial procedure.

4. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments.

---

[4] Nunez actually filed two motions for new trial, one pro se and the other through counsel. His pro se motion, filed first, raised the following grounds for relief:

1. The attorney was ineffective counsel and withheld important evidence from the jury due to defendant not paying attorney $4500.00 when defendant already paid $2000.00.

2. The attorney withheld testimony of witness Antonio Mango, who was willing to testify that Jenifer Legg and defendant were having consensual sex, and both parties had a mutual friendship.

3. The attorney, Mr. Norton, refused to obtain Joseph Munley's statement which stated that he knew that the defendant and Jenifer Legg had a close relationship, and often visited him, together at his house.

4. The attorney did not show the conflicting reports made by Jenifer Legg and Naomi Smith, from the police report and sex crime unit and what was said in the Courtroom. All three statements contradicted each other and showed numerous inconsistencies.

5. Why was the multiple semen withheld from the jury, only producing the defendant's and not showing the others.

(Ex. 6, some grammatical alterations made.)

The motion for new trial filed by his counsel stated the following grounds for relief:

1. Witness Antonio Mango could not be located until after the trial concluded.

2. Doe 1 gave an expensive gift to her mother, Linda Legg, which may have motivated her to give negative testimony against Nunez.

3. Verizon provided drastically different phone records to Defendant than those provided to the State.

4. Defendant was denied opportunity to show that he was not necessarily the source of semen or injury.

(Ex. 7.)

> 5. The trial court erred in the sentence by improperly denying Appellant visitation with his son.

(Ex. 13.)[5] By entry dated November 18, 2010, the Ohio court of appeals affirmed petitioner's convictions, but remanded for resentencing. (Ex. 15.) He was resentenced on December 28, 2010; however, the resentencing was not officially journalized until January 12, 2011. (Ex. 17.)

Nunez took no direct appeal from his resentencing; however, on March 23, 2011, he filed a pro se motion for leave to file a delayed appeal and for appointment of counsel, along with a notice of appeal from his resentencing. (Exs. 18, 19.) In his motion for delayed appeal, Nunez stated that he had been unable to timely file his appeal because he "was never appointed an attorney for appeal and [he] had no knowledge of appellate rules." (Ex. 19 at 203.) On April 8, 2011, his motion was denied and his appeal was dismissed. (Exs. 20, 21.) A year later, on April 6, 2012, Nunez attempted to file a delayed appeal with the Ohio Supreme Court, asserting the same grounds, but that was denied and dismissed on May 23, 2012. (Exs. 22, 23, 24.)[6]

On April 13, 2012, Nunez filed his habeas petition in this Court setting forth the following grounds for relief:

---

[5] There was no challenge in the direct appeal to the trial court's denial of a new trial.

[6] At the very same time, on April 6, 2012, Nunez attempted to file a delayed appeal in the Ohio Supreme Court with respect to his original direct appeal. (Exs. 25, 26.) He asserted the following propositions of law:

1. The conviction in this case failed to present sufficient evidence of guilt against the defendant in violation of the Fifth and Fourteenth Amendments of the United States Constitution.
2. Defendant was denied the effective assistance of counsel as guaranteed by Section 10, Art. I, of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution.
3. A defendant is denied due process in violation of Section 16, Art. I, of the Ohio Constitution when the trial court fails to follow proper trial procedure.
4. A defendant's conviction must be supported by the manifest weight of the evidence in accordance with Section 2, 10, and 16, of Art. I, of the Ohio Constitution.

(Ex. 26, capitalization altered.) That motion for delayed appeal was also denied on May 23, 2012. (Ex. 27.)

1. The conviction is not supported by sufficient evidence in violation of the Fifth and Fourteenth amendments of the United States Constitution.

   *Supporting Facts*: There was a lack of physical, credible, or direct evidence, sufficient or reliable enough to sustain the conviction in this case. No physical or material evidence was presented to support the occurrence that any crime was committed. Testimony presented and given was unreliable, contradictive when compare[d] to original police reports and unreasonable when closely examined and compared. It is contended the burden of proof was not met in this case.

2. Petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

   *Supporting Facts*: Counsel failed to do a full and complete investigation of the case; failed to challenge the entering of material prejudicial evidence; failed to challenge testimony of witnesses which could have led to the exclusion of evidence; failed to challenge phone records in the case; and, failed to discover all favorable witnesses.

3. Petitioner is actually innocent of the charges and conviction.

   *Supporting Facts*: Newly discovered evidence brought forward after trial in the form of affidavits and otherwise, supports the position and fact that petitioner did not commit any crimes in this case, which if produced at the time of trial would have changed the outcome of the verdict. Two other individuals [sic] DNA was also discovered that was never considered by the jury.

(Doc. No. 1, capitalization altered.)

**B.  The Applicable Law**

Under 28 U.S.C. § 2244(d):

(1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

### C. Analysis

#### 1. Timeliness of the Petition

Although Nunez was actually resentenced on December 28, 2010,[7] that sentence was not journalized until January 12, 2011. Under Ohio rules, "[a] judgment is effective only when entered on the journal by the clerk." Ohio Crim. R. 32(c). Therefore, January 12, 2011 is the relevant starting point.

Under Ohio App. R. 4(A), petitioner had 30 days, or until February 11, 2011 to file a direct appeal.[8] Petitioner did not do so and, under § 2244(d)(1)(A), his resentencing became final on that day. The clock for the 1-year statute of limitations began to run on February 12, 2011. Fed. R. Civ. P. 6(a)(1). Therefore, absent any tolling, this habeas petition would have been due on February 11, 2012.[9]

---

[7] None of the state court proceedings prior to Nunez's resentencing have any relevance for purpose of calculating the statute of limitations for this habeas petition. "'Final judgment in a criminal case means sentence. The sentence is the judgment.'" *Burton v. Stewart*, 549 U.S. 147, 156, 127 S. Ct. 793, 166 L. Ed. 2d 628 (2007) (quoting *Berman v. United States*, 302 U.S. 211, 212, 58 S. Ct. 164, 82 L. Ed. 204 (1937)). Therefore, the AEPDA "limitations period [does] not begin until both [the] conviction *and* sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review[.]'" *Id*. at 156-57 (emphasis in original) (quoting § 2244(d)(1)(A)).

[8] Under Ohio rules, as under federal rules, when calculating the period for filing, the day of the triggering event is not counted, but the final day of the period is counted. *See* Ohio App. R. 14(A). Therefore, the first day of the 30-day period was January 13, 2011 and the last day was February 11, 2011.

[9] It is sometimes argued that the "1 year" in § 2244 must be defined as 365 days, which can be a problem when the period includes a leap year. "Every federal circuit that has addressed the issue has concluded that [the] method [in

6

In Ohio, in criminal proceedings, "[a]fter the expiration of the thirty day period provided by App. R. 4(A) for the filing of a notice of appeal as of right, an appeal may be taken by a defendant with leave of the court to which the appeal is taken[.]" Ohio App. R. 5(A)(1)(a). The Sixth Circuit has held, however, that motions for delayed appeal are not part of the direct appeal process and, therefore, do not affect "finality" under § 2244(d)(1). The pendency of these proceedings merely tolls the running of the 1-year period pursuant to § 2244(d)(2). *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001).

Here, on March 23, 2011, Nunez filed a pro se notice of appeal and motion for leave to file a delayed appeal. (Exs. 18, 19.) That stopped the clock from March 24, 2011 until May 23, 2011, inclusive (i.e., the time it took for the Ohio court of appeals to deny the motion on April 8, 2011, plus 45 days allowed for seeking review by the Ohio Supreme Court), a total of 61 days.[10] That moved Nunez's deadline for filing his habeas petition to April 12, 2012. He filed on April 13, 2012, one day late.

---

Fed. R. Civ. P. 6], i.e., the 'anniversary' method, for calculating a time period applies to the AEDPA's one-year limitation period." *Espinoza v. Lopez*, No. 1:10-cv-01211-JLT, 2012 WL 2995475, at *2 ( E.D. Cal. July 23, 2012) (citing *Rogers v. United States,* 180 F.3d 349, 355, n. 13 (1st Cir. 1999); *Mickens v. United States,* 148 F.3d 145, 148 (2d Cir. 1998); *Hernandez v. Caldwell,* 225 F.3d 435, 436 (4th Cir. 2000); *Flanagan v. Johnson,* 154 F.3d 196, 200-02 (5th Cir. 1998); *Bronaugh v. Ohio,* 235 F.3d 280, 284-85 (6th Cir. 2000); *United States v. Marcello,* 212 F.3d 1005, 1009-10 (7th Cir. 2000); *Moore v. United States,* 173 F.3d 1131, 1135 (8th Cir. 1999)). "Under the 'anniversary' method, the first day of the one-year limitations period is the day after the triggering event, thus giving petitioners 'until the close of business on the anniversary date of . . . ' the triggering event to file a federal habeas petition." *Espinoza*, 2012 WL 2995475, at *2 (citing *Marcello,* 212 F.3d at 1010; *Patterson,* 251 F.3d at 1247).

[10] This is the point in the analysis where the Court's reasoning differs from that of the R&R. The R&R concludes that, because Nunez did not seek relief from the Ohio Supreme Court, "only the period from the filing of the motion to its denial tolls the running of the statutory period." (R&R at 1276, n.4 (citing *Applegarth v. Warden*, 377 F. App'x 448, 449 (6th Cir. 2010)). However, the Court believes this is a misreading of *Applegarth*, where, as here, there was no application to the Ohio Supreme Court for discretionary review following the denial of a motion for delayed appeal. The Sixth Circuit noted that, had there been such an application, "the limitations period would have remained tolled until the Ohio Supreme Court resolved his application." *Applegarth*, 377 F. App'x at 450. And even Applegarth's untimely motion for reconsideration, filed more than a year later, "did not toll the AEDPA period *beyond the 45-day period* described above." *Id*. (emphasis added.) The court concluded that there was tolling from January 26, 2006, when the Ohio court of appeals denied the motion for delayed appeal, until March 14, 2006, when the 45-day period for seeking discretionary review by the Ohio Supreme Court expired. The same is true here.

Nunez argues that because "the Eighth District Court of Appeals denied the Petitioner leave to appeal on April 8, 2011, therefore the one-year time limit would have begun to accrue on July 8, 2011, at the conclusion of the ninety days during which he could have sought certiorari in the United States Supreme Court." (Objections at 1294.) He concludes that, with this additional 90-day period, his petition was not due until May 24, 2012. Of course, this is incorrect, since writs of certiorari are directed only to "state court[s] of last resort[,]" Sup. Ct. R. 10(b), not to intermediate state courts of appeal.

Although Nunez *is* afforded the benefit of the additional 45 days during which he could have sought review by the Ohio Supreme Court from the denial of his motion for delayed appeal (even though he did not do so), he *is not* permitted an additional 90 days to attempt an out-of-rule review by the United States Supreme Court.

By the Court's calculation outlined above, this petition was filed one day late.

2. **Equitable Tolling**

"AEDPA's one-year limitation period may be equitably tolled if a petitioner shows that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented a timely filing." *McDonald v. Warden, Lebanon Corr. Inst.*, 482 F. App'x 22, 31 (6th Cir. 2012).

Nunez argues that, even if his petition is untimely, he is entitled to equitable tolling of the one-year statutory period for several different reasons, the most compelling being an argument that suggests failure to timely file due to a breakdown in the entire process occasioned by the State's failure to afford him his Sixth Amendment right to counsel to complete his direct appeal following his resentencing.

Nunez argues that, at his resentencing, he "clearly stated in open court that he wished to assert his constitutional right to appeal[]" and that the trial judge "stated that the Office of the Ohio Public Defender was being appointed to represent him on appeal." (Objections at 1296.) He has filed here a motion to expand the record (Doc. No. 23), seeking an order from this Court directing the respondent to file a copy of the transcript of his resentencing hearing, which he claims will support this argument for equitable tolling.[11] Although there was, indeed, nothing to prevent Nunez from filing a pro se notice of appeal to preserve his rights, if he truly had reason to believe counsel had been appointed (since, if he was indigent, he had a constitutional right to appointed counsel to complete his direct appeal), it was at least arguably reasonable for him to have relied upon that belief to his detriment. Copies of letters attached to his objections suggest that there was some confusion about representation. (*See* Objections, Exs. A-1, A-4.) Further, it appears that Nunez acted quite promptly to file his pro se motion for delayed appeal after determining that counsel had apparently not been appointed.

This Court is unwilling to treat as harmless the possible denial of a constitutional right and to overlook it because petitioner is not sophisticated enough to raise it as a separate ground for relief in the instant petition. The record shows that petitioner did ask both the Ohio court of appeals and the Ohio Supreme Court to allow him to take delayed appeals because he

---

[11] The Court also notes that the original journal entry dated August 31, 2009, which was eventually reversed as to the sentence, clearly states:

> DEFENDANT ADVISED OF APPEAL RIGHTS.
> DEFENDANT INDIGENT, COURT APPOINTS THOMAS A. REIN AS APPELLATE COUNSEL.
> TRANSCRIPT AT STATE'S EXPENSE.

(Ex. 5.) However, the entry made on January 12, 2011, after his resentencing, contains no such notations. (Ex. 17.) This could have been an oversight by the state court, or it could reflect that, in fact, the court never advised Nunez of his rights, made no finding with regard to indigency, and actually did not appoint counsel.

had never been appointed an attorney and really had no knowledge of how to proceed on his own. (Ex. 19 at 203 ("[he] was unable to file a Notice of Appeal within the time allowed therefor, because [he] was never appointed an attorney for appeal and [he] had no knowledge of appellate rules"); Ex. 23 at 210 ("the Cuyahoga Common Pleas Court indicated on the record that Defendant-Appellant would be appointed counsel for his second appeal, but failed to do so").) Both courts summarily dismissed his requests for appeal and for appointment of counsel, without addressing the significance of his inartful assertion of denial of counsel. (Exs. 20, 24.) As a result, the three grounds raised in this habeas petition are undoubtedly now procedurally defaulted in Ohio, unless Nunez would be granted leave to reopen his appeal.

Especially in light of the fact that this Court has determined that Nunez's petition is only one day late, the Court is of the view that it should further explore: (1) whether Nunez was told he would be represented by counsel on direct appeal from his resentencing and, if so, why that did not happen; (2) if Nunez was not appointed counsel for his direct appeal, what significance, if any, that fact would have for the instant habeas petition; and (3) how, or whether, the facts that will be discovered impact the resolution of respondent's motion to dismiss. Until these questions, at the very least, are answered, the Court will defer any determination regarding applicability of equitable tolling, as well as any ruling on the motion to dismiss.

### III. CONCLUSION

For the reasons discussed above, the Court concludes that this habeas petition was filed one day late. However, the Court is unable to determine from the record as it stands whether Nunez is entitled to equitable tolling.

Therefore, the Court orders as follows:

1. This matter is referred back to Magistrate Judge Nancy Vecchiarelli for further proceedings, including a follow-up Report and Recommendation, consistent with this opinion.

2. Doc. No. 23 is granted, and respondent is directed to file (and serve) a copy of the transcript of Nunez's resentencing hearing by no later than March 24, 2014. Should there be no such transcript available, this Court directs Magistrate Judge Vecchiarelli to conduct an evidentiary hearing to ascertain the necessary facts.

3. Resolution of respondent's motion to dismiss (Doc. No. 7, styled as "Return of Writ") is deferred.

**IT IS SO ORDERED**.

Dated: February 25, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**