UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VICTOR NUNEZ, | ) CASE NO. 1:12-CV-0903 |
| Petitioner, | ) JUDGE LIOI |
| v. | ) MAGISTRATE JUDGE VECCHIARELLI |
| BENNIE KELLY, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

This habeas petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2), and on referral pursuant to the August 29, 2014 Memorandum Opinion and Order of the District Judge. (Doc. No. 34.) Currently pending before the Court is the petition for habeas relief, pursuant to 28 U.S.C. § 2254, filed by Victor Nunez ("Petitioner" or "Nunez").

For the reasons given below: (1) Nunez's first, second and third grounds for relief in his § 2254 petition should be DISMISSED with prejudice; (2) the petition should be GRANTED with respect to the fourth ground for relief, based on the state trial court's failure to appoint Nunez counsel on appeal from his December 2010 re-sentencing; and (3) this case should REMANDED to the state appellate court with instructions to: (a) grant Nunez's motion for leave to file a delayed appeal from his December 2010 re-sentencing; and (b) appoint Nunez counsel on appeal.

## I. Relevant State Proceedings

### A. Indictment, Trial, Sentencing and Direct Appeal

In April 2009, a Cuyahoga County grand jury issued an indictment charging

Nunez with five counts of rape, four counts of kidnaping with sexual motivation and sexually violent predator specifications, three counts of intimidation of a crime victim or witness, and one count of aggravated burglary; these counts arise out of multiple incidents of sexual assault involving two different women. (Doc. No. 7-1 at Ex. 1.) Nunez pleaded not guilty to the charges in the indictment, and waived his right to a jury trial with respect to the sexually violent predator specifications. (Doc. No. 7-1 at Ex. 3.)

In July 2009, a jury found Nunez guilty of three counts of rape, two counts of kidnaping with sexual motivation specifications, one count of Intimidation of a victim or witness, and one count of aggravated burglary. (Doc. No. 7-1 at Ex. 4.) The court found him not guilty of the sexually violent predator specifications in the two counts of kidnaping. (Doc. No. 7-1 at Ex. 5.) On August 31, 2009, the court sentenced Nunez to concurrent and consecutive terms of imprisonment totaling 22 years. (*Id*.)

In September 2009, Nunez timely appealed his judgment and sentence. (Doc. No. 7-1 at Ex. 12.) Nunez asserted the following five assignments of error on appeal:

> I. The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against appellant.
>
> II. Appellant's convictions are against the manifest weight of the evidence.
>
> III. The trial court erred by not following proper trial procedure.
>
> IV. Appellant was denied effective assistance of counsel as guaranteed by section 10, article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments.
>
> V. The trial court erred in the sentence by improperly denying Appellant visitation with his son.

(Doc. No. 7-1 at Ex. 13.) In November 2010, the state appellate court overruled Nunez's assignments of error. *State v. Nunez*, No. 93971, 2010 WL 4684721 (Ohio App. Ct. Nov. 18, 2010). The appellate court, however, *sua sponte* held, under a plain error standard, that the trial court had erroneously imposed separate sentences for counts of kidnaping with a sexual motivation and rape, which were allied offenses of similar import in Nunez's case. *Id*. at *8. Thus, the appellate court also remanded the case to allow the State to elect the charges on which it would proceed so that the trial court could re-sentence Nunez accordingly.

Nunez did not file a timely notice of appeal in the Ohio Supreme Court.

**B.   Re-Sentencing**

On December 28, 2010, the state trial court conducted a hearing in accordance with the state appellate court's opinion. (Transcript of Dec. 28, 2010 Hearing ("Tr."), Doc. No. 25-1.)[1] After merging the relevant counts of conviction, the trial court again imposed concurrent and consecutive terms totaling 22 years. (Tr. at 26-28.) During the hearing, Nunez inquired whether the trial court would appoint him counsel on appeal from the re-sentencing (*id* at 25), and the trial court informed Nunez that it would appoint him counsel for an appeal from his re-sentencing:

> I did already assign you appellate counsel . . . and your
> appeal was denied by the Eighth District Court of Appeals.
> Essentially your appeal was accepted but your convictions
> were affirmed by the Court of Appeals.

---

[1] The transcript of Nunez's December 2010 re-sentencing hearing was not included in the materials that accompanied the States's Return of Writ in this case. In March 2014, in response to the undersigned's order, the State submitted the transcript of the hearing. (Doc. No. 25.)

-3-

> As it relates to your resentencing, I will certainly provide you
> with appellate counsel as it relates to your resentencing
> hearing, which we are having today . . . .

(*Id*. at 29.) On January 12, 2011, the state trial court entered a journal entry reflecting its re-sentencing of Nunez. (Doc. No. 7-1 at Ex. 17.)

**C.    Motions for Delayed Appeals**

On March 23, 2011, Nunez, *pro se*, filed in the state appellate court a notice of appeal, and a motion for appointment of counsel and for leave to file a delayed appeal of his December 2010 re-sentencing. (Doc. No. 7-1 at Exs. 18, 19.) In the motion, Nunez stated that he had not filed a timely notice of appeal because he had not been appointed counsel and had no knowledge of the appellate rules. (Doc. No.7-1 at Ex. 19.) On April 8, 2011, the state appellate court denied leave to appeal and dismissed Nunez's appeal. (Doc. No. 7-1 at Exs. 20, 21.)

Nearly one year later, on April 6, 2012, Nunez, *pro se*, filed in the Ohio Supreme Court notices of appeal, and motions for leave to file a delayed appeal of the state appellate court's decisions from November 2010 (affirming his conviction and remanding for re-sentencing) and April 2011 (denying his motion for a delayed appeal from his December 2010 re-sentencing). (Doc. No. 7-1 at Exs. 22, 23, 25, 26.) In his motion for leave to file a delayed appeal from the state appellate court's April 2011 decision, Nunez stated that the trial court had "indicated on the record that [Nunez] would be appointed counsel for his second appeal, but failed to do so." (Doc. No. 7-1 at Ex. 23.) In his motion seeking leave to file a delayed appeal from the state appellate court's November 2010 decision affirming his conviction, Nunez indicated that he

-4-

intended to raise the following relevant grounds for relief:

> I. The conviction in this case failed to present sufficient evidence of guilt against the defendant in violation of the Fifth and Fourteenth Amendments of the United States Constitution.
>
> II. Defendant was denied the effective assistance of counsel as guaranteed by Section 10, Art. I, of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution

(Doc. No. 7-1 at Ex. 26.) On May 23, 2012, the Ohio Supreme Court denied Nunez's motions and dismissed his appeals. *State v. Nunez*, 967 N.E.2d 763 (Table), 131 Ohio St.3d 1552 (Ohio 2012).

## II. Proceedings in this Court

On April 13, 2012, Nunez, *pro se*, filed in this court a petition for a federal writ of habeas corpus, in which he asserted three grounds for relief:

> I. The conviction is not supported by sufficient evidence in violation of the Fifth and Fourteenth Amendments of the United States Constitution.
>
> II. Petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.
>
> III. Petitioner is actually innocent of the charges and conviction.

(Doc. No. 1.) With respect to his second ground for relief, Petitioner identifies various deficiencies in the performance of his trial counsel. (*Id*. at 5.)

The State moved to dismiss Nunez's petition as time barred. (Doc. No. 7.) Thereafter, the undersigned issued a report and recommendation that the State's motion be granted and Nunez's petition be dismissed as untimely. (Doc. No. 17.) That

report and recommendation concluded that Nunez had filed his petition 42 days beyond the expiration of the one-year statute of limitations. (*Id.* at 9.)

In his objections to the report and recommendation, Nunez stated, *inter alias*, that, despite the state trial court's statement that it would appoint him counsel on direct appeal from his December 2010 re-sentencing, he had never been appointed counsel. (Doc. No. 22 at 8-10.) Specifically, Nunez claimed that, upon his return to the state correctional facility after his res-sentencing, he had contacted, first, the Ohio Public Defender and, later, the Cuyahoga County Public Defender via letter, in order to "communicate issues that he believed should be addressed" on appeal. (Doc. No. 22 at 8.) Each office responded to his letter by indicating that the public defenders did not represent him on direct appeal. (*Id.* at 8-9.) Nunez supported his contention with copies of relevant correspondence. (Doc. No. 22-1.)

On February 25, 2014, the Court issued a memorandum opinion and order returning this matter to the magistrate judge. (Doc. No. 24.) In the order, the Court determined that Nunez's one-year statute of limitations expired on April 12, 2103, and, thus, his petition was one day late, as opposed to 42. (*Id.*) The Court instructed the magistrate judge to "further explore" Nunez's claim that the state trial court failed to appoint him counsel on direct appeal from his re-sentencing. (*Id.* at 10.)

On May 20, 2014, this Court issued a report and recommendation, recommending that the district judge: (1) deny the State's motion to dismiss the petition as untimely; and (2) instruct the State to file a supplemental return of writ, in which the State: (a) construes Nunez's petition to assert a fourth ground for relief, specifically, that Petitioner was denied his constitutional right to the assistance of counsel on direct

appeal from his re-sentencing when the state trial court failed to appoint him counsel; and (b) addresses both the procedural issues and merits of petition. (Doc. No. 31.) On August 29, 2014, the district judge issued an opinion and order agreeing with the magistrate judge's recommendation and returning the case to the magistrate judge for proceedings consistent with the May 2014 report and recommendation. (Doc. No. 34.)

On October 10, 2014, the State filed it Supplemental Return of Writ, in which it argues that each of Nunez's grounds for relief is either procedurally defaulted or not cognizable on habeas review. (Doc. No. 38.) On November 18, 2014, Nunez filed his Traverse. (Doc. No. 39.) Accordingly, this habeas petition is ready for review and disposition.

### III.  Procedural Issues

**A.    Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga County, Ohio sentenced Petitioner. (Doc. No. 7-1 at Ex. 17.) Cuyahoga County is within this Court's geographic jurisdiction. *See* 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

**B.    Exhaustion and Procedural Default**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas

corpus. See 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition. See *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. See *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Similarly, a federal court may not review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually

-8-

> enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

As a general principle, this Court can dismiss a habeas petition without prejudice to allow the petitioner to return to state court to pursue his available remedies. *See* 28 U.S.C. § 2254(c); *Rose v. Lundy*, 455 U.S. 509 (1982). However, if there are no longer any state court remedies still available to Petitioner with respect to an unexhausted claim, this Court may deem the claim procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac,* 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

This Court may review a procedurally defaulted claim only if the petitioner can demonstrate cause and prejudice for the default*, see Gray,* 518 U.S. at 162 ("[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground[2] for the conviction and sentence, and thus prevents federal habeas

---

[2] The Sixth Circuit has determined that "the application of *res judicata* is an adequate and independent state ground justifying foreclosure of constitutional claims in

corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."), or that this Court's failure to review the merits of his claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750.

Here, the State argues that Nunez's first (sufficiency of the evidence), second (ineffective assistance of trial counsel) and fourth (denial of the assistance of counsel on direct appeal) are procedurally defaulted.

### 1. Grounds One and Two

In his first ground for relief, Nunez argues that the evidence at trial was insufficient to support his conviction. (Doc. No.1.) In his second ground for relief, Nunez contends that he received ineffective assistance of trial counsel when his trial counsel "failed to do a full and complete investigation of the case; failed to challenge the entering of material prejudicial evidence; failed to challenge testimony of witnesses which could have led to the exclusion of evidence; failed to challenge phone records in the case; and failed to discover all favorable witnesses." (*Id*.) Nunez raised his first ground for relief in his direct appeal to the state appellate court (doc. no. 7-1 at ex. 13), but did not timely seek review of this argument in the Ohio Supreme Court. The record reflects that Nunez did not raise his second ground for relief in state court.[3] Accordingly, neither of these grounds for relief is exhausted.

---

habeas." *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

[3] Although Nunez raised an ineffective assistance of trial counsel claim on direct appeal, he based it on different grounds. Specifically, in his direct appeal, Nunez argued that his trial counsel was ineffective in failing to exercise all of his peremptory challenges during jury selection and in opening the door to cross-examination about Nunez's past probation violations. (Doc. No. 7-1 at Ex. 13.)

Further, because Nunez can no longer assert them in state court, his first and second grounds for relief are also procedurally defaulted. Although Nunez included his first ground for relief in his April 2012 motion for a delayed appeal (doc. no. 7-1 at ex. 26), the Ohio Supreme Court denied that motion, *see Nunez*, 967 N.E.2d 763 (Table), 131 Ohio St.3d 1552. That denial constitutes an independent and adequate state procedural ground. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Further, Nunez's second ground for relief arises out of the record of proceedings in the trial court, and he could have raised it on direct appeal from his conviction. Because he failed to do so, under Ohio law, *res judicata* now prohibits him from raising the issue in any post-conviction proceeding, *see State v. Cole*, 443 N.E.2d 169, 171, 2 Ohio St.3d 112, 113 (Ohio 1982); *State v. Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175 (Ohio 1967), or in any subsequent appeal from his re-sentencing, *see State v. FIscher*, 942 N.E.2d 332, 342, 128 Ohio St.3d 92, 101 (Ohio 2010). The Sixth Circuit has determined that "[p]ursuant to AEDPA, the state court's application of the *res judicata* doctrine constitutes an adequate and independent ground barring federal habeas relief." *Hanna*, 694 F.3d at 613.

Nunez does not assert any cause for his procedural default of his first and second grounds for relief.[4] In his third ground for relief, however, he contends that he is actually innocent of the crimes of which he was convicted. (Doc. No. 1 at 7.) In his

---

[4] In his Traverse, Petitioner contends that the state trial court's failure to appoint him counsel at re-sentencing constitutes good cause for the procedural default of his first and second grounds for relief. (Doc. No. 39 at 9-11.) These grounds for relief, however, arise out of Petitioner's conviction, not his re-sentencing. Accordingly, the state trial court's failure to appoint Nunez counsel on appeal from his re-sentencing does not constitute cause for Nunez's procedural default of these grounds for relief.

-11-

objections to the undersigned's first report and recommendation in this case, Nunez argued that his "probable innocence" is sufficient to excuse his procedural default. (Doc. No. 22 at 15-18.) For the reasons discussed in Section III(C), *supra*, however, that claim lacks merit. Accordingly, Nunez's first and second grounds for relief are procedurally defaulted and should be dismissed.

### 2. Ground Four

The Court construes Nunez's petition to assert a fourth ground for relief, specifically, that the state trial court denied Nunez his constitutional right to the effective assistance of counsel when it failed to appoint him counsel on direct appeal from his re-sentencing. In one of the headings of its argument, the State contends that this ground for relief is "procedurally defaulted for [Nunez's] failures in the state court of appeals and the Ohio Supreme Court." (Doc. No. 38 at 9.) In the text of its argument, however, with respect to procedural default, the State contends only that the state trial court's failure in this context cannot excuse Nunez's procedural default of the other claims raised in his petition, which arose out of his trial and conviction, that he already presented, or had the opportunity to present, to the state appellate court. This Court agrees with that limited statement. This argument, however, has no bearing on the issue of whether Nunez should have been appointed counsel for his appeal from his re-sentencing. This issue is addressed in Section IV, *infra*, on the merits.[5]

---

[5] The State does not address the issue of whether Nunez exhausted and/or procedurally defaulted his claim that the trial court violated his constitutional rights by failing to appoint him counsel in his direct appeal from his re-sententencing. The record, however, demonstrates that Nunez raised the issue of appointed counsel multiple times throughout his state court proceedings. In addition to requesting the appointment of counsel at his December 2010 re-sentencing hearing, in each of his motions for leave to

**C.     Ground Three - Actual Innocence**

A petitioner may satisfy the fundamental miscarriage of justice exception to procedural default by submitting evidence that a constitutional violation has resulted in the conviction of someone who is actually innocent. See *Dretke v. Haley*, 541 U.S. 386, 393 (2004). A petitioner relying on actual innocence to overcome a procedural default faces a substantial burden, as "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). A petitioner must advance new evidence not presented at trial to support a claim of actual innocence, but a court's determination as to whether a reasonable jury would have found the petitioner guilty should be based both on the new evidence and on the evidence presented at trial. *House*, 547 U.S. at 537-38. In addition, the standard permits review only in the extraordinary case: "'[I]n the vast majority of cases, claims of actual innocence are rarely successful.'" *Id.* at 538 (quoting *Schlup*, 513 U.S. at 324). Finally, although the United States Supreme Court has not entirely foreclosed the possibility that a federal habeas petitioner may raise his actual innocence as a freestanding claim in a § 2254 petition, the Court's jurisprudence on the issue of actual innocence does establish that, *if* actual innocence merits federal habeas relief, a petitioner asserting such a claim must support it with evidence that satisfies an

---

file a delayed appeal related to his re-sentencing, Nunez asserted that the state trial court had failed to appoint him counsel despite his request that it do so. (Doc. No. 7-1 at Exs. 19, 23.) Accordingly, Nunez properly exhausted this claim and the Court sees no basis for procedural default.

"extraordinarily high" standard. *Herrera v. Collins*, 506 U.S. 390, 417 (1993).

Here, Nunez supports his claim of actual innocence with: (1) the affidavit of Antonio Mango ("Mango Aff.") (doc. no. 1-1); (2) an unsworn letter purporting to be signed by Joseph Munley ("Munley Ltr.") (doc. no. 1-2); and (3) Nunez's unsupported assertion that "[t]wo other individuals['] DNA was also discovered that was never considered by the jury" (doc. no. 1 at 7). In his affidavit, Mango states that he observed Nunez interact with one of Nunez's accusers, who had also accused Mango of raping her with Nunez. (Mango Aff. at ¶¶ 3-4, Doc. No. 1-1.) He claims that the victim "did not appear to be in any fear or distress, and acted in a calm, ordinary manner" when she was around Nunez. (*Id*. at ¶ 3.) Mango also denied sexually assaulting the victim, and claimed that her accusations against Nunez were false. (*Id*. at ¶ 4.)

In the letter, Munley states that he knew one of the victims through Nunez, and that, when Munley saw Nunez and the victim together, "at no time did I see or sense any form of apprehension or fear from" the victim towards Nunez, and "[n]either did she express any concern about Victor to me." (Munley Ltr., Doc. No. 1-2.) Munley described Nunez as "a rational and kindhearted individual," and opined that rape was "simply not in [Nunez's] nature." (*Id*.)

This evidence is simply not sufficient to establish Nunez's actual innocence in this case. He does not support his claim that investigators discovered other individuals' DNA with any documentation. Nor does he explain how this discovery tends to prove his innocence in light of the facts of the case, particularly given evidence that Nunez admitted to having a sexual relationship with the two victims. *Nunez*, 2010 WL 4684727 at *2. Further, neither the affidavit nor the letter directly contradicts trial

-14-

evidence – including the testimony of the victim's themselves – that Nunez sexually assaulted the two victims in this case. *Id*. at **1-2. There is no basis to conclude that the jury would have acquitted Nunez had it been presented with the evidence he offers in support of his claim of innocence. Accordingly, he has failed to meet the high threshold for an actual innocence claim, and his third ground for relief neither excuses his procedural default nor independently entitles him to habeas relief. Thus, Nunez's first, second and third grounds for relief should be dismissed with prejudice.

### IV. The Merits of Petitioner's Remaining Claim

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the

-15-

petitioner's conviction.  See *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  See *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).

An indigent defendant's right to appointed counsel on appeal is well established.  *See, e.g., Douglas v. California*, 372 U.S. 353, 354-55 (1963) ("Here the issue is

-16-

whether or not an indigent shall be denied the assistance of counsel on appeal . . . For there can be no equal justice where the kind of an appeal a man enjoys depends on the amount of money he has."). Here, the record demonstrates that, despite Nunez's request for counsel on direct appeal from his re-sentencing, the state trial court failed to appoint him counsel for that purpose. This is a violation of Nunez's Sixth Amendment right to the assistance of counsel.

The State does not dispute that the trial court failed to appoint counsel in this case. In fact, the State acknowledges that this Court may "order the state court of appeals to consider an appeal of Nunez's re-sentencing." (Doc. No. 38 at 17.) The State argues, however, that it "would likely be inappropriate" to grant habeas relief in this case because: (1) the only claims that Nunez will be able to raise on direct appeal will be claims arising out of his re-sentencing; and (2) Nunez has not raised any habeas claims challenging the constitutionality of the sentence he received at re-sentencing. These arguments are unavailing. The fact that Nunez's potential claims on direct appeal will be highly circumscribed is not a sufficient basis to deny him habeas relief in this case. Further, the State points to no legal authority requiring Petitioner to have asserted claims related to his re-sentencing in order to prevail on a habeas claim that he was deprived of his right to appeal from that re-sentencing.[6] The State's arguments present no basis to deny Nunez habeas relief for a clear violation of his Sixth Amendment rights. Nunez's petition should be granted with respect to this ground for relief, and his case should be remanded to the state appellate court with instructions to:

---

[6] Moreover, these claimed errors were made without the benefit of counsel.

-17-

(1) grant Nunez's motion for leave to file a delayed appeal from his December 2010 re-sentencing; and (2) appoint Nunez counsel on appeal.

## IV. Conclusion

For the reasons given above: (1) Nunez's first, second and third grounds for relief in his § 2254 petition should be DISMISSED with prejudice; (2) the petition should be GRANTED with respect to the fourth ground for relief, based on the state trial court's failure to appoint Nunez counsel on appeal from his December 2010 re-sentencing; and (3) this case should REMANDED to the state appellate court with instructions to: (a) grant Nunez's motion for leave to file a delayed appeal from his December 2010 re-sentencing; and (b) appoint Nunez counsel on appeal.

Date: November 21, 2014                              /s/ *Nancy A. Vecchiarelli*
                                                     United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985)*, reh'g denied,* 474 U.S. 1111**.